BENJAMIN B. WAGNER
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:13-MC-00062-LKK-AC |
| Plaintiff, | |
| v. | CONSENT JUDGMENT OF FORFEITURE |
| APPROXIMATELY $54,895.00 IN U.S. CURRENCY, | |
| Defendant. | |

Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

1. On November 28, 2012, the Drug Enforcement Administration (hereafter "DEA") seized Approximately $54,895.00 in U.S. Currency (the "defendant currency").

2. The DEA commenced administrative forfeiture proceedings, sending direct notice to all known potential claimants and publishing notice to all others. On or about April 1, 2013, the DEA received a claim from Austin Mendenhall ("Mendenhall") asserting an ownership interest in the defendant currency.

3. The United States represents that it could show at a forfeiture trial that on November 28, 2012, the DEA received information regarding suspicious travel by two passengers, Mendenhall and James Jones ("Jones"), who were traveling on Southwest Airlines from Pittsburgh, PA to Sacramento, CA.  Agents learned that Mendenhall had

1

several prior arrests for drug violations and was in the business of selling cocaine in Youngstown, OH. Jones had prior arrests for controlled substance violations. Based on this information, agents responded to the Sacramento International Airport to speak with Mendenhall and Jones.

4. When Mendenhall and Jones arrived in Sacramento on November 28, 2012, agents observed Mendenhall and Jones exit the jet way walking separately, but joining up in the concourse. DEA agent Delaney, displaying his badge, approached Mendenhall, identified himself as law enforcement and asked permission to speak with him. Jones stopped along with Mendenhall. When asked where he was traveling, Mendenhall said Youngstown, OH and that he was going to be in Sacramento for a couple of days to gamble. He said he had never been to Sacramento before, did not know where he was going to stay or if they were going to rent a car. When asked if the bag he was pulling was the only luggage he was traveling with, Mendenhall said it was. He gave the agent permission to search him and his luggage. Mendenhall had currency on him which he said was $1,000. After searching the carry-on bag, the agent asked Mendenhall again if he had any checked luggage and this time he admitted that he did.

5. DEA agent Britt approached Jones who was closely monitoring the conversation between agent Delaney and Mendenhall. He identified himself as law enforcement and asked if he could speak to Jones and Jones agreed. Jones stated that they were traveling to Sacramento to gamble, that Mendenhall had family in Sacramento and that is who they were staying with. When asked if he had any checked luggage, Jones said no. When asked for identification, Jones unzipped his computer style bag and retrieved his Ohio driver's license from his wallet. Agent Britt noticed a large amount of currency inside the bag when Jones was retrieving his license. When asked about the currency, Jones said it was about $1,000. Agent Delaney, who approached agent Britt and Jones by this time, asked Jones if he had any checked bags and Jones again stated no.

6. The agents went to the baggage area and located two checked bags, one for

2

Mendenhall and one for Jones.  Agent Delaney, having been granted permission to search his luggage, opened the bag marked with Mendenhall's name and discovered two large vacuum sealed bags of currency.  Agent Delaney removed the currency from Mendenhall's bag and placed the bag on the baggage carousel where it was retrieved by Mendenhall.  Agent Britt located Jones' checked luggage and brought it to the baggage claim area.  The agents again spoke with Mendenhall and Jones, and agent Delaney asked again for permission to search their checked luggage.  Both Mendenhall and Jones agreed.  Agent Britt opened Jones bag and located a large sum of currency.

7. Before searching Mendenhall's checked bag, agent Delaney asked Mendenhall how much currency he was traveling with and he stated $1,000.  Agent Delaney clarified that there was no other currency inside the checked luggage and Mendenhall said there was not.  Mendenhall and Jones went with the agents to an office in the airport.  Agent Delaney explained that he had already removed a large amount of currency in vacuum sealed bags from Mendenhall's bag.  Mendenhall said it did not belong to him and he did not know who it belonged to.  Mendenhall was advised that he was not under arrest and free to leave, but the agents would appreciate if he stayed to answer questions regarding the currency.  Mendenhall said he works fixing cars, that he made approximately $5,000 last year, and has not filed income taxes for many years.  He was asked several times if he had ever been arrested, but he denied ever being arrested.  He said he had not received an inheritance but he later said he had received $80,000 in inheritance.  Jones said he did not own the currency in Mendenhall's checked luggage.

8. Both sums of currency from Mendenhall ($54,895) and Jones ($11,170), including the currency on their person, was presented separately to drug detection dog, "Fox", by California Highway Patrol Officer D. Rogers.  Officer Rogers advised that Fox positively alerted to the odor of narcotics on both sums of currency found in their checked luggage, the currency on Mendenhall's person but not the currency in Jones' carry-on bag.  Further investigation revealed that Mendenhall filed for Chapter 7 Bankruptcy on August 9, 2012, and that he stated in his bankruptcy documents he had no assets

available for his unsecured creditors.

9.  The United States could further show at a forfeiture trial that the defendant currency is forfeitable to the United States pursuant to 21 U.S.C § 881(a)(6).

10. Without admitting the truth of the factual assertions contained above, Austin Mendenhall specifically denying the same, and for the purpose of reaching an amicable resolution and compromise of this matter, Austin Mendenhall agrees that an adequate factual basis exists to support forfeiture of the defendant currency.  Austin Mendenhall acknowledged that he is the sole owner of the defendant currency, and that no other person or entity has any legitimate claim of interest therein.  Should any person or entity institute any kind of claim or action against the government with regard to its forfeiture of the defendant currency, Austin Mendenhall shall hold harmless and indemnify the United States, as set forth below.

11. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355, as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

12. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in which the defendant currency was seized.

13. The parties herein desire to settle this matter pursuant to the terms of a duly executed Stipulation for Consent Judgment of Forfeiture.

Based upon the above findings, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

14. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered into by and between the parties.

15. Upon entry of this Consent Judgment of Forfeiture, $41,895.00 of the Approximately $54,895.00 in U.S. Currency, together with any interest that may have accrued on the entire amount seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

16. Upon entry of this Consent Judgment of Forfeiture, but no later than 60

days thereafter, $13,000.00 of the Approximately $54,895.00 in U.S. Currency shall be returned to potential claimant Austin Mendenhall through his attorney Albert A. Palombaro.

17. The United States of America and its servants, agents, and employees and all other public entities, their servants, agents, and employees, are released from any and all liability arising out of or in any way connected with the seizure or forfeiture of the defendant currency. This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure or forfeiture, as well as to those now known or disclosed. Austin Mendenhall waived the provisions of California Civil Code § 1542.

18. Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court finds that there was reasonable cause for the seizure of the defendant currency and a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 shall be entered accordingly.

19. No portion of the stipulated settlement, including statements or admissions made therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(a)(4) of the Federal Rules of Evidence.

20. All parties will bear their own costs and attorneys' fees.

IT IS SO ORDERED.

DATED: January 9, 2014.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

CERTIFICATE OF REASONABLE CAUSE

Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court enters this Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was reasonable cause for the seizure of the above-described defendant currency.

DATED: January 9, 2014.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT